SHEPPARD MULLIN RICHTER & HAMPTON LLP
JILL M. PIETRINI (Cal. Bar No. 138335)
  jpietrini@sheppardmullin.com
PAUL A. BOST (Cal. Bar No. 261531)
  pbost@sheppardmullin.com
BENJAMIN O. AIGBOBOH (Cal. Bar No. 268531)
  baigboboh@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6017
Telephone:   (310) 228-3700
Facsimile:    (310) 228-3701

*Attorneys for Defendants*
METRO-GOLDWYN-MAYER INC. and WARNER
BROS. ENTERTAINMENT INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DEUS EX MACHINA MOTORCYCLES PTY. LTD., an Australia private limited company,<br><br>Plaintiff,<br><br>v.<br><br>METRO-GOLDWYN-MAYER INC., a Delaware corporation, and WARNER BROS. ENTERTAINMENT INC., a Delaware corporation,<br><br>Defendants. | Case No.  2:20-cv-04822-PLA<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:          September 30, 2020<br>Time:          10:00 a.m.<br>Courtroom:  255 E. Temple St., #780<br>Judge:         Hon. Paul L. Abrams<br><br>Complaint Filed:  May 29, 2020 |

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ........................................................................................ 1

II.    FACTUAL BACKGROUND ...................................................................... 3

       A.     The Complaint ................................................................................ 3

       B.     "Deus Ex Machina" ....................................................................... 4

       C.     The Film ......................................................................................... 4

III.   LEGAL STANDARD ................................................................................. 7

IV.    THE COMPLAINT SHOULD BE DISMISSED UNDER FRCP
       12(B)(6) ...................................................................................................... 8

       A.     The First Amendment Bars Plaintiff's First Claim for Trademark
              Infringement Pursuant to 15 U.S.C. §§ 1114, 1125(a) .................. 8

              1.     The Film and Promotions Therefor Are Expressive Works ....... 10

              2.     Defendants' Use of "*Deus Ex Machina*" is Artistically
                     Relevant to the Film .......................................................... 11

              3.     Defendants' Use of "*Deus Ex Machina*" Does Not
                     Explicitly Mislead as to the Source or Content of the Film ....... 13

       B.     Plaintiff's Second Claim for Trademark Dilution Pursuant to 15
              U.S.C. § 1125(c) Fails as a Matter of Law ................................... 18

              1.     Plaintiff Has Not Alleged that its DEUS EX MACHINA
                     Mark is Sufficiently Famous for Protection Against
                     Dilution .............................................................................. 18

              2.     Defendants' Non-Commercial Use of the Mark Cannot
                     Give Rise to a Dilution Claim ............................................. 19

       C.     Plaintiff Has Not Plausibly Alleged its Third Claim for Unfair
              Competition or False Advertising Pursuant to 15 U.S.C. §
              1125(a) ........................................................................................ 20

V.     CONCLUSION ........................................................................................ 21

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aegis Software, Inc. v. 22nd District Agricultural Assoc.*
255 F. Supp. 3d 1005 (S.D. Cal. 2017) ................................................................ 18

*Arcsoft, Inc. v. Cyberlink Corp.*
153 F. Supp. 3d 1057 (N.D. Cal. 2015) ............................................................... 19

*Balistreri v. Pacifica Police Dep't*
901 F.2d 696 (9th Cir. 1988) ................................................................................... 7

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) .................................................................................................. 7

*Brown v. Electronic Arts, Inc.*
724 F.3d 1235 (9th Cir. 2013) .............................................................. 9, 11, 14, 16

*Caiz v. Roberts*
382 F. Supp. 3d 942 (C.D. Cal. 2019) .................................................................... 9

*Dahon North America, Inc. v. Hon*
2012 WL 1413681 (C.D. Cal. Apr. 24, 2012) ..................................................... 19

*Daly v. Viacom, Inc.*
238 F. Supp. 2d 1118 (N.D. Cal. 2002) .......................................................... 10, 20

*Dickinson v. Ryan Seacrest Enterprises, Inc.*
2018 WL 6112628 (C.D. Cal. Oct. 1, 2018) .................................................. 10, 20

*Dillinger, LLC v. Elec. Arts Inc.*
2011 WL 2457678 (S.D. Ind. June 16, 2011) ..................................................... 11

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*
2018 WL 2306733 (E.D. Cal. May 21, 2018) ..................................................... 10

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*
547 F.3d 1095 (9th Cir. 2008) ........................................................................ 11, 14

*Fayer v. Vaughn*
649 F.3d 1061 (9th Cir. 2011) ................................................................................. 7

*Films of Distinction, Inc. v. Allegro Film Productions, Inc.*
　12 F. Supp. 2d 1068 (C.D. Cal. 1998) .................................................................. 8

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.*
　947 F. Supp. 2d 922 (N.D. Ind. 2013) ........................................................... 11, 12

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*
　618 F.3d 1025 (9th Cir. 2010) ........................................................................... 15

*Gordon v. Drape Creative, Inc.*
　909 F.3d 257 (9th Cir. 2018) .......................................................................... 9, 11

*Irving v. Lennar Corp.*
　2013 U.S. Dist. LEXIS 47206 (E.D. Cal. Mar. 30, 2013) ...................................... 8

*Louis Vuitton Malletier, S.A. v. Warner Bros. Entm't Inc.*
　868 F. Supp. 2d 172 (S.D.N.Y. 2012) .......................................................... 12, 17

*Mattel, Inc. v. MCA Records, Inc.*
　296 F.3d 894 (9th Cir. 2002) ................................................................. 16, 19, 20

*Micro/sys., Inc. v. DRS Techs., Inc.*
　2015 WL 12748630 (C.D. Cal. Feb. 13, 2015) ................................................... 20

*Nissan Motor Co. v. Nissan Computer Corp.*
　378 F.3d 1002 (9th Cir. 2005) ........................................................................... 18

*Page v. Something Weird Video*
　960 F. Supp. 1438 (C.D. Cal. 1996) .................................................................. 10

*Planet Coffee Roasters, Inc. v. Dam*
　2009 WL 2486457 (C.D. Cal. Aug. 12, 2009) ................................................... 19

*Pomegranate Communications, Inc. v. Sourcebooks, Inc.*
　2019 WL 7476688 (D. Ore. Dec. 16, 2019) ................................................ 10, 13

*Reflex Media, Inc. v. Pilgrim Studios, Inc.*
　2018 WL 6566561 (C.D. Cal. Aug. 27, 2018) ............................................. 10, 14

*Rogers v. Grimaldi*
　875 F.2d 994 (2d Cir. 1989) .......................... 2, 8, 9, 10, 11, 12, 14, 16, 17, 20, 21

*Roxbury Entertainment v. Penthouse Media Group, Inc.*
　669 F. Supp. 2d 1170 (C.D. Cal. 2009) ............................................................. 13

-iii-

*Solis v. City of Fresno*
    2012 WL 868681 (E.D. Cal. Mar. 13, 2012)...................................................7

*Stewart Surfboards, Inc. v. Disney Book Group, LLC*
    2011 WL 12877019 (C.D. Cal. May 11, 2011)...................................................20

*Stroud v. Richmond*
    2017 WL 3782700 (N.D. Cal. Aug. 31, 2017)......................................19

*Twentieth Century Fox Television v. Empire Distri., Inc.*
    875 F.3d 1192 (9th Cir. 2017)..............................................8, 9, 10, 11, 12, 13, 16

*VIRAG, S.R.L. v. Sony Comput. Entm't Am.* LLC
    699 Fed. Appx. 667 (9th Cir. 2017) ......................................9

Statutes

15 U.S.C. § 1114..............................................................................2, 4, 8

15 U.S.C. § 1125(a) ...........................................................2, 3, 4, 5, 8, 20

15 U.S.C. § 1125(a)(1)(A) .................................................................20

15 U.S.C. § 1125(a)(1)(B) .................................................................20

15 U.S.C. § 1125(c) ...........................................................................2, 4, 18

15 U.S.C. § 1125(c)(1) .......................................................................18

15 U.S.C. § 1125(c)(2)(A) ..................................................................18

15 U.S.C. § 1125(c)(3)(c) ...................................................................19

Lanham Act...........................................................1, 2, 8, 9, 10, 13, 17, 21

Other Authorities

FRCP 11(b)(3) ...................................................................................15

FRCP 12(b)(6) ...................................................................................7

# I.    __INTRODUCTION__

Plaintiff Deus Ex Machina Motorcycles Pty. Ltd. ("Plaintiff"), a maker of custom motorcycles and related goods, cannot state a cognizable Lanham Act claim based on the well-known Latin phrase "*deus ex machina*" merely appearing on a jacket in Defendants' motion picture *The Sun Is Also a Star* (the "Film").  This centuries-old Latin expression – which translates to "god from a machine" – functions as both a literary device and an integral storyline in the Film, as well as in the novel upon which the Film is based.  The jacket at issue was an ***original costume design***, independently created as a custom design specifically for the Film, which bears no similarities, references, or any connection whatsoever to Defendants' products or merchandise.   Although Plaintiff claims certain trademark rights in DEUS EX MACHINA, a brand name it obviously did not coin, Plaintiff does not have a monopoly over ***all*** uses of the phrase.  The Ninth Circuit and other federal courts have repeatedly held that use of a trademark in motion pictures and other expressive works is subject to heightened First Amendment protection and can be actionable under the Lanham Act only if it has no artistic relevance to the underlying work or the creator of the work explicitly misleads as to source of the underlying work.  Because Defendants' use of the Latin phrase "*deus ex machina*" has clear artistic relevance to the Film and does not explicitly mislead, Plaintiff's claims necessarily fail as a matter of law and the entire Complaint should be dismissed with prejudice.

The Latin expression "*deus ex machina*" is a literary plot device descended from Classical Greek theater that refers to an unexpected event or occurrence that helps a character solve a seemingly insolvable difficulty or problem.  The Film uses the phrase in reference to this established meaning.  Specifically, the Film's male lead character writes "Deus Ex Machina" in his journal while contemplating his fate and destiny.  Later that same day, he observes a girl wearing a jacket bearing that same phrase and, inspired by that confluence of events, introduces himself and soon finds himself in love.  Quite literally, the jacket is itself a *deus ex machina*.  Neither the

Film nor Defendants' advertising, marketing or promotional materials remotely suggest, much less explicitly mislead consumers to believe, that Plaintiff endorses or sponsors the Film.  In fact, the trailer for the Film never uses the phrase and only briefly and partially depicts the phrase used on the jacket.

The Ninth Circuit and virtually every other federal circuit to consider the issue have adopted the Second Circuit's test in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), to decide whether the First Amendment defeats claims based on the use of trademarks in expressive works.  Under the *Rogers* test, Defendants only have the burden of establishing that the Film and its trailer are expressive works, which is plainly satisfied on the face of the complaint.  The burden thus shifts to Plaintiff to show that it can plausibly plead that use of "*deus ex machina*" in the Film meets one of the two elements of the *Rogers* test:  (1) that the use of "*deus ex machina*" in the Film has no artistic relevance to the underlying work; or (2) that Defendants' use explicitly misleads as to the source of the Film.  Plaintiff does not and cannot plausibly allege that the phrase "*deus ex machina*" lacks artistic relevance to the Film or is used in a way that explicitly misleads as to the source or content of the Film.  Accordingly, Defendants' use of "*deus ex machina*" in the Film and its related marketing and promotions cannot constitute trademark infringement pursuant to 15 U.S.C. §§ 1114, 1125(a).

Plaintiff's second claim for trademark dilution, pursuant to 15 U.S.C. § 1125(c), fails because Plaintiff does not, and cannot, plead that its DEUS EX MACHINA trademark is famous, which is a condition precedent to seeking protection from dilution under the Lanham Act.  Plaintiff's dilution claim additionally fails because the Lanham Act expressly exempts non-commercial uses of trademarks from dilution liability.  Because the uses at issue are non-commercial, they are exempt from liability.

Finally, Plaintiff's third claim for unfair competition and false advertising, pursuant to 15 U.S.C. § 1125(a), is also subject to the *Rogers* test and, thus, fails as a

1    matter of law.   Accordingly, Plaintiff's entire complaint should be dismissed with

2    prejudice and without leave to amend.

3    **II.    FACTUAL BACKGROUND**

4        **A.    The Complaint**

5        Plaintiff began conducting business in 2006 in Australia as a maker of custom

6    motorcycle parts and hand-built motorcycles, and its business later expanded into

7    related goods, including clothing.  Dkt. 1, ¶¶ 7-8.  Plaintiff did not begin conducting

8    business in the United States until 2011.  *Id.*, ¶ 10.  Plaintiff's Complaint alleges

9    ownership of incontestable, registered trademark rights in the DEUS EX MACHINA

10   trademark for various articles of clothing, including jackets.  *Id.*¸ ¶ 17.  Plaintiff

11   alleges that the underpinnings of its DEUS EX MACHINA brand and brand story

12   draw on custom motorcycle culture and vintage surf culture and the intersection and

13   mingling of those lifestyle cultures with art, music, and other popular culture.  *Id.*,

14   ¶ 13.  Plaintiff alleges that its DEUS EX MACHINA branded jackets are marketed

15   primarily to members of the public who are interested in motorcycles and the

16   motorcycle lifestyle (*id.*, ¶ 19), and that its jackets are marketed to males 18 to 30

17   years old, although some of Plaintiff's jackets are bought and worn by women.  *Id.*,

18   ¶ 12.

19       Plaintiff alleges that Defendants produced, marketed, distributed, and released

20   the Film.  Plaintiff alleges that in the Film, as well as the trailer for the Film, "lead

21   actress … Yara Shahidi, who played teenager 'Natasha Kingsley,' wears a blue and

22   rustic gold bomber jacket ('Jacket') with the words 'DEUS EX MACHINA' inscribed

23   in the back in large letters."  *Id.*, ¶ 25.  Plaintiff also alleges, on information and belief,

24   that "Charles Melton, who played teenager 'Daniel Bae' [in the Film], posed for

25   pictures posted to social media to help promote the Movie in which he wore clothing

26   actually sold by [Plaintiff]."  *Id.*, ¶ 31.  The complaint does not allege that Defendants

27   otherwise used the phrase "*deus ex machina*" to promote the Film.

28

Plaintiff alleges that the jacket is not Plaintiff's product, is inferior in quality to Plaintiff's products, and is inconsistent with what Plaintiff's consumers expect from Plaintiff. *Id.*, ¶¶ 26, 28, 33.B. Likewise, Plaintiff alleges that the Film – "a schmaltzy, teen-style love story" – is "inconsistent with the brand image [Plaintiff] has built." *Id.*, ¶ 33.D.

Based on the foregoing, Plaintiff alleges claims for trademark infringement under 15 U.S.C. §§ 1114 and 1125(a), trademark dilution under 15 U.S.C. § 1125(c), and unfair competition and false advertising under 15 U.S.C. § 1125(a). *Id.*, ¶¶ 38-50.

## B.  **"Deus Ex Machina"**

Plaintiff does not allege that it coined the phrase "*deus ex machina*," nor can it. "*Deus ex machina*" is a well-known literary device:

> Deus ex machina is Latin for 'God from a machine.'  It designates the practice of some Greek playwrights (especially Euripides) to end a drama with a god, lowered to the stage by a mechanical apparatus, who by his judgment and commands resolved the dilemmas of the human characters.  The phrase is now used for any forced and improbable device – a telltale birthmark, an unexpected inheritance, the discovery of a lost will or letter – by which a hard-pressed author resolves a plot.

*A Glossary of Literary Terms*, Abrams, M.H. and Harpham, Geoffrey, 9th Ed., pp. 76-77 (2009); Declaration of Paul A. Bost ("Bost Decl.") ¶ 2, Ex. A.[1]

## C.  **The Film**

The Film tells the story of two teenagers, Natasha Kingsley and Daniel Bae,

---

[1]  *See also* Bost Decl. ¶ 2, Ex. A; *A Poet's Glossary*, Hirsch, Edward, p. 161 (2014) ("A plot device in which something unexpectedly appears – a person, a group, an object – to help a character overcome a seemingly insolvable difficulty."); *The Oberon Glossary of Theatrical Terms*, Winslow, Colin, 2d Ed., p. 50 (2011) ("Now used to describe any dramatic intervention, by means of stage machinery or otherwise, often employed by the playwright to resolve a difficult situation in the plot.").  *See also* Defendants' Request for Judicial Notice ("RJN").

who fall in love over the course of one day in New York City.[2]  *Id.*, ¶ 3, Ex. B.  *See also* RJN.  Natasha is an undocumented immigrant from Jamaica facing imminent deportation.  She wears a jacket with the phrase "Deus Ex Machina" embroidered on its back while wandering Manhattan during her final hours in the U.S.  She is hardened by her experience and does not believe in fate or even love.  Daniel is the college-bound son of Korean immigrants, balancing his interest in poetry with his parents' wish for him to become a doctor.  Ever the romantic, Daniel begins the day writing "Deus Ex Machina" in his poetry journal before leaving for his interview for admission to Dartmouth University.  *Id.*, 8:46.  Daniel encounters Natasha in Manhattan wearing her jacket, leading him to believe that they were fated to meet: "Her jacket.  'Deus ex machina.'  I wrote it this morning.  It means 'god in the machine.'  Open up your heart.  Open up your heart to destiny."  *Id.*, 17:04.  After following Natasha and then saving her from potentially getting killed by a speeding car while walking in Manhattan, Daniel pursues her across the city over the course of a single day in an attempt to convince her that the two were destined to fall in love.  *Id.*

While Daniel is in pursuit, Natasha is trying desperately to meet with immigration officials to stay enforcement of the deportation order for her family.  A kind immigration official refers her to an immigration attorney who she barely gets an appointment with, only to show up that day at his office to be told to come back later because the attorney was hit on his bicycle while riding to work by a speeding car – the same speeding car that almost hit Natasha.  Further, this same immigration attorney is the Dartmouth alum with whom Daniel was scheduled to meet.  Natasha's

---

[2]      The screenplay for the Film was written by Tracy Oliver based upon a novel of the same name written by Nicola Yoon (the "Book").  Bost Decl. ¶ 3, Ex. B.  The Book describes Natasha Kingsley's jacket as bearing the phrase "Deus Ex Machina": "I watch as she walks away.  She moves her backpack to one shoulder, and I see it: DEUS EX MACHINA is printed in big white letters on the back of her leather jacket. *God from the machine*.  I hear the conductor's voice in my head and wonder if it's a Sign."  Bost Decl. ¶ 4, Ex. C, p. 50.  *See also* RJN.

and Daniel's good fortune appears to run out, though; Natasha is unable to reverse the immigration order and she returns to Jamaica.  In the Film's final twist of fate, many years later, Natasha meets her former immigration attorney at a coffee shop, only to hear Daniel's voice, as he prepares to recite poetry, just before she leaves.

Plaintiff does not allege that the Film's one-sheet or any of its promotional materials use the phrase "*deus ex machina*."  The Film's official trailer fleetingly displays *portions* of the back of the jacket in three shots, screenshots of which are below:







Bost Decl. ¶ 5, Ex. D.  The phrase "*deus ex machina*" is not spoken in the Film's official trailer.  *Id.*

## III.   **LEGAL STANDARD**

Under FRCP 12(b)(6), a party may present by motion its defense that the complaint fails "to state a claim upon which relief can be granted."  A claim should be dismissed where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A claimant must do more than allege "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, a complaint must, at minimum, allege sufficient facts "to raise a right to relief above a speculative level" and must include factual allegations rendering the claim not just conceivable on the face of the complaint, but plausible.  *Id.* at 555, 570.  "In the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim."  *Solis v. City of Fresno*, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012), citing *Twombly*, 550 U.S. at 570.  Also, courts are not required to assume the truth of "legal conclusions merely because they are cast in the form of factual allegations," *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011), or "'allegations that contradict matters properly subject to judicial notice' or … material attached to or incorporated by reference into

the complaint." *Irving v. Lennar Corp.*, 2013 U.S. Dist. LEXIS 47206, at *22 (E.D. Cal. Mar. 30, 2013), *quoting Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).

## IV.   THE COMPLAINT SHOULD BE DISMISSED UNDER FRCP 12(B)(6)

### A.   The First Amendment Bars Plaintiff's First Claim for Trademark Infringement Pursuant to 15 U.S.C. §§ 1114, 1125(a)

Claims of trademark infringement under the Lanham Act are usually governed by a likelihood-of-confusion test.  However, to determine whether unauthorized uses of trademarks in ***expressive works*** constitute trademark infringement, the Ninth Circuit has consistently applied a *different test* for nearly two decades.  *Twentieth Century Fox Television v. Empire Distri., Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017), citing *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002).  This test, known as the *Rogers* test, is derived from the Second Circuit's opinion in *Rogers v. Grimaldi* in which the court held that use of Ginger Rogers' name in the movie title *Ginger and Fred* did not violate the Lanham Act.  875 F.2d 994, 1001-02 (2d Cir. 1989).  The Ninth Circuit has "identified two rationales for treating expressive works differently from other covered works: because (1) they implicate the First Amendment right of free speech, which must be balanced against the public interest in avoiding consumer confusion; and (2) consumers are less likely to mistake the use of someone else's mark in an expressive work for a sign of association, authorship, or endorsement."  *Empire*, 875 F.3d at 1196, *citing Rogers*, 875 F.2d at 997-1000.  "Under the *Rogers* test, 'the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest.'"  *Films of Distinction, Inc. v. Allegro Film Productions, Inc.*, 12 F. Supp. 2d 1068, 1077 (C.D. Cal. 1998), *citing Twin Peaks Productions v. Publications Intern.*, 996 F.2d 1366, 1379 (2d Cir. 1993).

"Under the *Rogers* test, the title of an expressive work does not violate the Lanham Act 'unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as

to the source or the content of the work.'"  *Empire*, 875 F.3d at 1196, *quoting Mattel*, 296 F.3d at 902 (pop song *Barbie Girl* did not infringe Mattel's trademark rights in BARBIE).  In 2008, the Ninth Circuit extended the *Rogers* test to cover not just titles but allegedly infringing uses within the body of an expressive work.  *Id.*, *citing E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (depiction of a strip club modeled after plaintiff's Play Pen strip club in a video game did not violate the Lanham Act).

The *Rogers* test requires a defendant to "make a threshold legal showing that its alleged infringing use is part of an expressive work protected by the First Amendment."  *Gordon v. Drape Creative, Inc*., 909 F.3d 257, 264 (9th Cir. 2018).  If the defendant satisfies this low threshold, the burden shifts to the plaintiff who must show "(1) that it has a valid, protectable trademark, and (2) that the mark is either not artistically relevant to the underlying work *or* explicitly misleading as to the source or content of the work."  *Gordon*, 909 F.3d at 265 (emphasis in original).  If the plaintiff satisfies both elements, it must still prove infringement using a likelihood of confusion test.  *Id.*

Courts in the Ninth Circuit have not only consistently applied the *Rogers* test to defeat meritless infringement claims but regularly do so on the pleadings to guard against facially-meritless claims.  *See Brown v. Electronic Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013) (use of plaintiff Jim Brown's image in videogame was artistically relevant to defendant's videogame and did not explicitly mislead as to its source; affirming district court's order granting motion to dismiss); *VIRAG, S.R.L. v. Sony Comput. Entm't Am.* LLC, 699 Fed. Appx. 667, 668 (9th Cir. 2017) (use of plaintiff's VIRAG mark in racing videogame was not a Lanham Act violation; affirming district court's ruling on motion to dismiss); *Caiz v. Roberts*, 382 F. Supp. 3d 942, 952 (C.D. Cal. 2019) (rap album title *Mastermind* satisfied *Rogers* test; granting motion to

dismiss on plaintiff rapper's claims for infringement of his registered MASTERMIND trademark).[3]

On their face, Plaintiff's claims cannot survive the *Rogers* test:  the Film is unquestionably an expressive work, and Plaintiff cannot plausibly plead that Defendants' use of "*deus ex machina*" is not artistically relevant to the Film or explicitly misleads as to the source or content of the Film.

### 1.    The Film and Promotions Therefor Are Expressive Works

The Film is an expressive work and therefore the alleged use of Plaintiff's mark therein must be assessed pursuant to the *Rogers* test.  *See Rogers*, 875 F.2d at 997 ("Movies, plays, books, and songs are all indisputably works of artistic expression and deserve protection.").  *See also Empire*, 875 F.3d at 1196, *citing Charles v. City of Los Angeles*, 697 F.3d 1146, 1151-52 (9th Cir. 2012).  Likewise, the Film's trailer and other marketing for the Film are expressive works.  *See Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002), *quoting Cher v. Forum Int'l Inc.*, 692 F.2d 634, 639 (9th Cir.1982) ("advertisements of expressive works are not actionable where the advertisements are 'merely an adjunct of the protected [work] and promote only the protected [work].'"); *Page v. Something Weird Video*, 960 F. Supp. 1438, 1444 (C.D. Cal. 1996) ("Defendants' advertising is protected because the videos themselves are protected by the First Amendment, and the advertising is incidental to the protected publication of the videos.").

---

[3]     *See also Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 2018 WL 2306733, at *5 (E.D. Cal. May 21, 2018) (title of book, *Oh! The Places You'll Boldly Go!*, satisfied *Rogers* test; granting motion for judgment on the pleadings on plaintiff's Lanham Act claims based on its alleged rights in the mark OH! THE PLACES YOU'LL GO!); *Reflex Media, Inc. v. Pilgrim Studios, Inc.*, 2018 WL 6566561, at *6 (C.D. Cal. Aug. 27, 2018) (*Love At First Flight* television series did not infringe name of plaintiff's YouTube series; granting motion to dismiss); *Dickinson v. Ryan Seacrest Enterprises, Inc.*, 2018 WL 6112628, at *7 (C.D. Cal. Oct. 1, 2018) (use of plaintiff's name, image, and likeness in television show did not violate the Lanham Act; granting motion to dismiss); *Pomegranate Communications, Inc. v. Sourcebooks, Inc.*, 2019 WL 7476688, at *6 (D. Ore. Dec. 16, 2019), citing (book titled *Women Who Dared:  52 Stories of Fearless Daredevils, Adventurers & Rebels* did not infringe plaintiff's WOMEN WHO DARE registered trademark; granting motion to dismiss).

Because there is (and can be) no dispute that the Film, and its trailer and marketing, are expressive works, the burden shifts to Plaintiff to plead facts sufficient to demonstrate that the phrase "*deus ex machina*" has no artistic relevance to the Film or explicitly misleads as to the source or the content of the Film.  Plaintiff has not and cannot satisfy this burden.  On the contrary, Plaintiff's allegations prove that Defendants have not infringed Plaintiff's DEUS EX MACHINA mark.

### 2. Defendants' Use of "*Deus Ex Machina*" is Artistically Relevant to the Film

"The first prong of *Rogers* distinguishes cases in which the use of the mark has some artistic relation to the work from cases in which the use of the mark is arbitrary." *Empire*, 875 F.3d at 1198.  The threshold for establishing artistic relevance to the underlying work is very low.  *See E.S.S.*, 547 F.3d at 1100 ("only the use of a trademark with 'no artistic relevance to the underlying work whatsoever' does not merit First Amendment protection.  In other words, the level of relevance merely must be above zero."); *Dillinger, LLC v. Elec. Arts Inc.*, 2011 WL 2457678, at *6 (S.D. Ind. June 16, 2011) ("[I]t is not the role of the Court to determine how meaningful the relationship between a trademark and the content of a literary work must be; consistent with *Rogers*, any connection whatsoever is enough."); *Gordon*, 909 F.3d at 269, quoting *Brown*, 724 F.3d at 1243, 1245 ("Indeed, 'even the slightest artistic relevance' will suffice; courts and juries should have not to engage in extensive 'artistic analysis.'"); *Brown*, 724 F.3d at 1243 ("This black-and-white rule has the benefit of limiting our need to engage in artistic analysis in this context.").

Plaintiff cannot plausibly allege that Defendants' use of "*deus ex machina*" in the Film, either as spoken or written by the characters or as shown on the jacket, is entirely void of artistic relevance.  On the contrary, Defendants use the Latin phrase "*deus ex machina*" as a plot device and storyline in the Film.  This alone is more than sufficient to establish artistic relevancy.  *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 947 F. Supp. 2d 922 (N.D. Ind. 2013).  In *Fortres Grand*, the plaintiff

alleged that the use of its trademark CLEAN SLATE as the name of fictional software program in the defendant's film constituted infringement.   The court granted defendant's motion to dismiss pursuant to the *Rogers* test.   Regarding the first prong, the court held that the use of a plaintiff's trademark to designate the name of fictional product in the movie was artistically relevant:

> Warner Bros.['] use of "clean slate" has artistic relevance to both the film and the websites [promoting the film].   Plaintiff's Complaint acknowledges as much in the allegations of its Complaint:   "Part of the plot of The Dark Knight Rises involves Batman's promise to another character, Selina Kyle, to procure a software program called CLEAN SLATE that will erase a person's criminal history from every computer database in the world."   [Internal citations omitted.]   The use of "clean slate" thus has at least the minimal level of artistic relevance to satisfy the low threshold of the first prong.

*Id.*, at 932.   Similar to *Fortres Grand*, the alleged use of Plaintiff's mark on a costume in the Film forms part of the plot of the Film, as Daniel writes the phrase "Deus Ex Machina" in his poetry journal and then later encounters Natasha wearing the jacket bearing the same phrase.   Thus, the use of "*deus ex machina*" is artistically relevant to the Film.

Moreover, the Film uses the phrase "*deus ex machina*" in clever reference to its well-established meaning.   *See Empire*, 875 F.3d at 1198, *quoting Mattel*, 296 F.3d at 902 ("A mark that has no meaning beyond its source identifying function is more likely to be used in a way that has 'no artistic relevance to the underlying work whatsoever.'").   The confluence of events intermingling Daniel, Natasha, and others in the Film is central to the Film's consideration of themes such as choice, fate, destiny, and coincidence.   Indeed, this confluence of events – and, more specifically, the jacket itself – is itself a *deus ex machina*, that is, an improbable plot contrivance that forces the viewer to ask herself if she believes that this is merely chance or destiny.   *See Id.* at 1199 (use of a mark "may have artistic relevance by supporting the themes … of the work."); *Louis Vuitton Malletier, S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012) (use of bag bearing famous Louis Vuitton

logo in movie scene was artistically relevant because, *inter alia*, it "introduces the comedic tension between [two of the main characters] that appears throughout the film."); *Roxbury Entertainment v. Penthouse Media Group, Inc.*, 669 F. Supp. 2d 1170, 1176 (C.D. Cal. 2009) (defendants' use of plaintiff's ROUTE 66 trademark in their pornographic film was artistically relevant; "Defendants have introduced evidence demonstrating at least some relationship between the mental imagery associated with the term 'Route 66,' e.g., road trips, cross-country travel, and the content of Defendants' movie.").

The fact that "*deus ex machina*" has a pre-existing meaning further establishes its artistic relevance to the Film.  A trademark owner does not have the right to control public discourse whenever the public imbues its mark with a meaning beyond its source-identifying function.  This "same limit applies with even more logical force where the mark had a public meaning *before* it ever played a source-identifying function."  *See Pomegranate Communications*, 2019 WL 7476688 at *6, *citing Medina v. Dash Films, Inc.*, 2016 WL 3906714, at *6 (S.D.N.Y. July 14, 2016) (emphasis in original).  Simply put, while Plaintiff is entitled to protect its trademark, it may not do so by "staking … claim to a pre-existing term and then attempting to remove all expressive, non-explicitly-misleading uses from public circulation."  *Id*.  The phrase "*deus ex machina*" unquestionably pre-existed Plaintiff's date of first use and the date of its federal trademark registration on which it relies in this case by several centuries.  Plaintiff cannot attempt to monopolize and control all use of that phrase in expressive works or the public discourse in general.  In short, Defendants easily surpass the relevance threshold.

### 3.   Defendants' Use of "*Deus Ex Machina*" Does Not Explicitly Mislead as to the Source or Content of the Film

"If the use of a mark is artistically relevant to the underlying work, the Lanham Act does not apply 'unless the title explicitly misleads as to the source or the content of the work.'"  *Empire*, 875 F.3d at 1199, *quoting Mattel*, 296 F.3d at 902.  For the

-13-

second prong of the *Rogers* test, "[i]t is key … that the creator must *explicitly* mislead consumers [by means of] an 'explicit indication,' 'overt claim,' or 'explicit misstatement' that caused such consumer confusion."  *Brown*, 724 F.3d at 1245, *quoting Rogers*, 875 F.2d at 1001 (emphasis in original).  "Mere use of a trademark alone cannot suffice to make such use explicitly misleading."  *E.S.S.*, 547 F.3d at 1100, *citing Mattel*, 296 F.3d at 902.

Plaintiff has not alleged, and cannot allege, that the Film or any of the promotions therefor contain any express or overt statements or indications that the Film is endorsed or sponsored by or associated with Plaintiff.  Nothing in the Film, other than the alleged use of the DEUS EX MACHINA mark itself, suggests any connection between Plaintiff and the Film, much less constitutes an express or overt statement of endorsement, sponsorship, or association.  Furthermore, the official trailer for the Film never uses the phrase "*deus ex machina*," nor does it even include a clear shot of the phrase as used on the jacket.  Plaintiff's Complaint fails to allege any facts indicating that the uses of "*deus ex machina*" in the Film explicitly mislead consumers as to the content or source of the Film.  Rather, Plaintiff makes nothing more than conclusory allegations pointing to the mere use of the mark in the Film.  That is not enough to satisfy the second prong of *Rogers*.  *See Reflex Media, Inc.*, 2018 WL 6566561 at *6 ("the [complaint] makes no allegations that the allegedly Infringing Series explicitly misleads consumers as to the content or source of the work … The Court simply does not see more than conclusory allegations in the [complaint] alleging as much, and Plaintiffs' reference to what essentially amounts to mere use is not enough to satisfy this prong.").

Although certain allegations appear intended to reflect some association with Plaintiff's brand, they uniformly fail.  For instance, Plaintiff alleges, on information and belief, that Charles Melton, the actor who played Daniel in the Film, "posed for pictures posted to social media to help promote the Film in which he wore clothing actually sold by [Plaintiff], creating the impression that [Plaintiff] was involved in

promoting the Film and that the use of inferior infringing products and references in the Film to DEUS EX MACHINA were authorized by [Plaintiff]."  Dkt. 1, ¶ 31. Tellingly, Plaintiff's allegation fails to identify, *inter alia*, whether the clothing allegedly worn by Mr. Melton displayed or bore the DEUS EX MACHINA mark, whether the posts identify the clothing as Plaintiff's, who posted these pictures, or to whose social media accounts the pictures were posted.  But even if Plaintiff could allege such facts, they cannot suffice to establish an explicit indication, overt claim, or explicit misstatement of affiliation or endorsement.  Plaintiff has not alleged that ***Defendants*** or anyone on their behalf made any statements in conjunction with these social media posts that would explicitly mislead consumers as to Plaintiff's affiliation with or endorsement of the Film.

Plaintiff also alleges, on information and belief, that "Defendants have authorized copies of the Jacket to be sold by among others, the websites www.hjacket.com and www.newamericanjackets.com."  Dkt. 1, ¶ 30.  Nothing on these websites suggests any connection between Defendants and the websites or the purported replica jackets they are selling.[4]  The websites neither state nor imply that the replica jackets are authorized or licensed by *anyone*, including by Plaintiff or Defendants.  Bost Decl. ¶ 6, Ex. E.  *See also* RJN.  In fact, the websites' descriptions and depictions of the replica jackets do not even use the phrase "*deus ex machina*." *Id.*[5]  Thus, on its face, this allegation also falls well short of stating facts that, if proven,

---

[4]    In fact, there is no connection:  Defendants have never authorized the creation or sale of replica jackets, much less the sale of replica jackets from these websites. Defendants also have never authorized these websites to use still images from the Film.  Defendants have provided Plaintiff with sworn declarations confirming the foregoing, such that any further argument by Plaintiff as to Defendants' purported authorization of the replica jackets is a violation of FRCP 11(b)(3), which prohibits the "later advocating" of spurious factual contentions.

[5]    It is not clear if Plaintiff is alleging that these unauthorized replica jackets, on their own, infringe and dilute its trademark rights.  To the extent Plaintiff is so alleging, it has not stated a claim for relief given that the websites' descriptions and depictions of the replica jackets do not use the phrase "*deus ex machina*." *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030

could suffice to establish an explicit indication, overt claim, or explicit misstatement of affiliation or endorsement.

If anything, Plaintiff's allegations refute any possibility that consumers would be misled as to any affiliation between Plaintiff and the Film.  Plaintiff alleges that the jacket is not a product of Plaintiff's and "that the style and coloring of the Jacket is not consistent with and/or is inferior in quality to what most consumers and motorcycle enthusiasts would associate with a motorcycle lifestyle consistent with the mark." Dkt. 1, ¶¶ 26, 28. Plaintiff further alleges that the Film is "a schmaltzy teen-style love story, totally inconsistent with brand image [Plaintiff] has built." *Id.*, ¶ 33.D.  Plaintiff likewise alleges that its market is directed to motorcycle and surf culture enthusiasts.  *Id.*, ¶¶ 13 & 19.  Far from overtly misleading to the source of the Film, these alleged differences make it even less likely that consumers will believe that Plaintiff had any involvement in the Film – whose themes are not related to vehicles of any kind, let alone motorcycles, or surfing.  *See Brown*, 724 F.3d at 1246-47 (emphasis in original) ("If [defendant's changes to plaintiff's likeness] had any impact on whether consumers believed that Brown endorsed the game, however, surely they made consumers *less* likely to believe that Brown was involved … [A]n action that could only make consumers less likely to believe that Brown endorsed Madden NFL cannot possibly satisfy the second prong of the *Rogers* test.").

(9th Cir. 2010), quoting 15 U.S.C. § 1125(a)(1) (emphasis added) ("To prove infringement, a trademark holder must show that **the defendant's use** of its trademark 'is likely to cause confusion, or to cause mistake, or to deceive.'").  Even if Plaintiff was able to plead that the replica jackets used or were advertised with its trademark *and* were authorized by Defendants, the replica jackets would nevertheless be protected by the First Amendment.  *See Empire*, 875 F.3d at 1197 ("Although it is true that these promotional efforts[, including the sale and licensing of consumer goods,] technically fall outside the title or body of an expressive work, it requires only a minor logical extension of the reasoning of *Rogers* to hold that works protected under its test may be advertised and marketed by name, and we so hold … The balance of First Amendment interests struck in *Rogers* and *Mattel* could be destabilized if the titles of expressive works were protected but could not be used to promote those works … Fox's promotional activities, including those that generate revenue, are auxiliary to the television show and music releases, which lie at the heart of its 'Empire' brand.").

Finally, any alleged confusion as to the authenticity of the jacket, as opposed to the source of the Film, is irrelevant to the *Rogers* analysis. "*Rogers* and the cases adopting its holding have consistently framed the applicable standard in terms of confusion as to the defendant's artistic work," not as to the source or content of a third-party's goods. *Louis Vuitton*, 868 F. Supp. 2d at 179. In *Louis Vuitton*, the plaintiff sued Warner Bros. under the Lanham Act over an alleged counterfeit Louis Vuitton bag that appeared in a scene in the motion picture *The Hangover 2*. The plaintiff alleged that consumers would be confused into believing that it approved use of the inauthentic product in the movie: "Under the expansive view Louis Vuitton advances, Warner Bros, would be liable – not for identifying its own product with the LVM Marks – but for identifying the [infringing] bag with the LVM Marks or, alternatively, for implying that Louis Vuitton approved the use of the [infringing] bag in the Film." *Id.*, at 181-82. The *Louis Vuitton* court held that this allegation does not "involve confusion as to [the defendant's] artistic work" and, thus, is not "even … the type of confusion that could potentially overcome the *Rogers* protection." *Id.* at 181.

Like the plaintiff in *Louis Vuitton*, Plaintiff alleges that Defendants' actions create the impression "that the use of inferior infringing products and references in the Movie to DEUS EX MACHINA were authorized by [Plaintiff]" and confuse Plaintiff's "customers and potential customers … as to the image that [Plaintiff] is trying to create with its products." Dkt. 1, ¶¶ 31, 35.B. These allegations do not involve any confusion as to the Film and certainly not to Plaintiff's production or endorsement or sponsorship of the Film. Thus, this type of confusion is irrelevant to the *Rogers* analysis.

Also, as in *Louis Vuitton*, Plaintiff "is trying to have it both ways"; it argues that the Jacket is sufficiently similar to its products to create consumer confusion but at the same time noticeably inferior and inauthentic to its products. 868 F. Supp. 2d at 182. Such "allegations of confusion are not plausible, let alone 'particularly compelling.'" *Id.*, at 181-82.

In sum, Defendants' use of "*deus ex machina*" does not explicitly mislead as to the source or content of the Film, and Plaintiff has not set forth any allegations in its Complaint that it does.   As such, Defendants' use of "*deus ex machina*" cannot infringe or constitute unfair competition as a matter of law.

**B.    Plaintiff's Second Claim for Trademark Dilution Pursuant to 15 U.S.C. § 1125(c) Fails as a Matter of Law**

**1.    Plaintiff Has Not Alleged that its DEUS EX MACHINA Mark is Sufficiently Famous for Protection Against Dilution**

15 U.S.C. § 1125(c)(1) limits protection against dilution to owners of "famous" trademarks.  "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  Courts may consider the following non-exclusive factors in determining fame:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii)   The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii)   The extent of actual recognition of the mark.

(iv)   Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. *Id.*

"The famousness prong of the claim is meant to 'carefully [limit] the class of trademarks eligible for dilution protection.'"  *Aegis Software, Inc. v. 22nd District Agricultural Assoc.*, 255 F. Supp. 3d 1005, 1009 (S.D. Cal. 2017) (dismissing claim for dilution on the pleadings), quoting *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999).  In essence, "the mark must be a household name."  *Id.*, quoting *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002).  *See also Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2005) (trademark dilution "is a cause of action reserved for a select class of marks—those marks with such powerful consumer associations that even noncompeting uses

can impinge on their value."). Protection against dilution is denied "to marks that are famous only in 'niche' markets." *Planet Coffee Roasters, Inc. v. Dam*, 2009 WL 2486457, at *3 (C.D. Cal. Aug. 12, 2009) (dismissing claim for dilution on the pleadings). *See also Dahon North America, Inc. v. Hon*, 2012 WL 1413681, at *9 (C.D. Cal. Apr. 24, 2012) (identifying BUDWEISER, CAMEL, and BARBIE as "truly famous marks"; dismissing claim for dilution on the pleadings).

Plaintiff has not pleaded that its DEUS EX MACHINA trademark is famous, "thereby failing to state a claim." *Stroud v. Richmond*, 2017 WL 3782700, at *2 (N.D. Cal. Aug. 31, 2017) (dismissing claim for dilution on the pleadings). Even if the Court were to look beyond this fundamental defect, Plaintiff has not pleaded any facts to show the extent and geographic reach of its advertising of its mark, much less the amount Plaintiff has invested in advertising its mark. Likewise, Plaintiff does not plead any facts showing the amount, volume, and geographic extent of its sales under the mark. Finally, all facts pleaded by Plaintiff going to the renown of its mark are conclusory. *See Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1067 (N.D. Cal. 2015) ("Given the high burden that a plaintiff faces in establishing that its mark is sufficiently famous to support a dilution claim, ArcSoft must plead more than conclusory assertions of fame to survive a motion to dismiss: it must plead facts that support a plausible inference that its mark qualified as a household name by … defendants' first use of the Infringing Marks."; dismissing claim for dilution on the pleadings). Simply put, Plaintiff "has not alleged facts sufficient to show that its mark is nationally famous." *Planet Coffee*, 2009 WL 2486457, at *3.

### 2. Defendants' Non-Commercial Use of the Mark Cannot Give Rise to a Dilution Claim

Even if Plaintiff had sufficiently pled that its mark is famous – and it has not – its dilution claim would still fail because 15 U.S.C. § 1125(c)(3)(c) expressly excludes "[a]ny noncommercial use of a mark" from dilution liability. In *Mattel v. MCA Records*, the Ninth Circuit found that the song "Barbie Girl" was noncommercial

speech, and, accordingly, was exempt from liability for dilution under the statute. 296 F.3d 894, 905-907 (9th Cir. 2002). The song was noncommercial even though it clearly "used Barbie's name to sell copies of the song," because the court held that the statute only implicates "purely commercial" speech, which does no more than propose a commercial transaction. *Id.* at 906-907. Likewise, in *Stewart Surfboards, Inc. v. Disney Book Group, LLC*, the court held that defendant's use of plaintiff's mark on the cover of a book was not purely commercial speech because it has "some artistic relevance" and, thus, "not actionable as trademark dilution." 2011 WL 12877019, at *8 (C.D. Cal. May 11, 2011).

Here, the use of "*deus ex machina*" in the Film is noncommercial or, put another way, not purely commercial. The phrase is used in the body of the Film, which is clearly an expressive work, regardless of whether its producers had a profit motive. The trailer is itself an expressive work and also is noncommercial to the extent that it is promoting a constitutionally protected expressive work. *See supra*, *Daly*, 238 F. Supp. 2d at1123. Because the Film and its trailer are not purely commercial, they are exempt from liability for trademark dilution.

C. **Plaintiff Has Not Plausibly Alleged its Third Claim for Unfair Competition or False Advertising Pursuant to 15 U.S.C. § 1125(a)**

It is unclear whether Plaintiff's claim for unfair competition and false advertising (Dkt. 1, ¶¶ 45-50) seeks relief pursuant to 15 U.S.C. §§ 1125(a)(1)(A) or (B). *See Micro/sys., Inc. v. DRS Techs., Inc.*, 2015 WL 12748630, at *3 (C.D. Cal. Feb. 13, 2015) (internal citations omitted) ("Section 1125(a)(1)(A) allows recovery for unfair competition, which can be premised upon a variety of theories including 'false designation of origin' – i.e., tricking a consumer into buying your goods by passing them off as those of a well-known competitor – and 'false association' – i.e., tricking a consumer into associating goods with another reputable entity … Additionally, section 1125(a)(1)(B) codifies a cause of action for false advertising.") Plaintiff's claim is barred by *Rogers* regardless of the theory. *See Dickinson*, 2018

WL 6112628, at *5 ("Courts have applied [the *Rogers* test] to expressive works when there are trademark infringement, false endorsement, and false advertising claims arising under the Lanham Act.").

## V.    **<u>CONCLUSION</u>**

Each of Plaintiff's claims are fundamentally defective as a matter of law and cannot be cured by further amendment.   Accordingly, the Court should grant Defendants' motion and dismiss Plaintiff's complaint in its entirety with prejudice and without leave to amend.

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated:  August 24, 2020                  By /s/Paul A. Bost

JILL M. PIETRINI
PAUL A. BOST
BENJAMIN O. AIGBOBOH

*Attorneys for Defendants*
METRO-GOLDWYN-MAYER INC. and
WARNER BROS. ENTERTAINMENT
INC.

SMRH:4810-3950-4576.5