| | |
|---|---|
| Case No.: **CV 20-4822-PLA** | Date: **October 23, 2020** |

Title:  **Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc., et al.**

---

PRESENT:  THE HONORABLE     **PAUL L. ABRAMS**
**UNITED STATES MAGISTRATE JUDGE**

| **Christianna Howard** | **N/A** | **N/A** |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| ATTORNEYS PRESENT FOR PLAINTIFF(S): | ATTORNEYS PRESENT FOR DEFENDANT(S): |
|---|---|
| NONE | NONE |

**PROCEEDINGS:  (IN CHAMBERS)   Order re Defendants' Motion to Dismiss (Docket No. 25)**

Pending before the Court is a Motion to Dismiss filed by defendants.  (Docket No. 25).  For the reasons explained below, the Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

**I**
**PROCEEDINGS**

On May 29, 2020, plaintiff filed a Complaint, alleging three causes of action against the named defendants: (1) trademark infringement, pursuant to 15 U.S.C. §§ 1114, 1125(a); (2) trademark dilution, pursuant to 15 U.S.C. § 1125(a); and (3) federal unfair competition and false advertising, pursuant to 15 U.S.C. § 1125(a). (See Docket No. 1).

On August 24, 2020, defendants filed a Motion to Dismiss the Complaint.  (Docket No. 25).  On September 9, 2020, plaintiff filed an Opposition to defendants' Motion. (Docket No. 29).  On September 16, 2020, defendants filed a Reply in support of their Motion.  (Docket No. 30).

This matter is deemed submitted and is ready for a decision.

**II**
**FACTUAL BACKGROUND**

The following factual background is derived from plaintiff's Complaint.  For purposes of resolving the pending Motion to Dismiss, the Court presumes that the facts alleged in plaintiff's Complaint are true.

Plaintiff began conducting business in 2006 in Australia as a maker of custom motorcycle parts and hand-built motorcycles.  (Docket No. 1 ¶7).  It later expanded its business into related goods, including clothing that plaintiff created to be compatible with a motorcycle riding lifestyle. (Id. ¶8).

Plaintiff owns an incontestable, registered trademark for the mark DEUS EX MACHINA for various articles of clothing, including jackets. (Id. ¶17). Plaintiff has devoted substantial time, effort, and resources over nearly 14 years to the development and extensive promotion of the DEUS EX MACHINA mark and the products offered thereunder. (Id. ¶18). During that nearly 14-year period, plaintiff has created a very specific brand image and reputation for quality in stylish streetwear in a broad range of global markets. (Id. ¶14). The underpinnings of plaintiff's DEUS EX MACHINA brand and brand story draw on custom motorcycle culture and vintage surf culture, along with the intersection and mingling of those lifestyle cultures with art, music, and other popular culture. (Id. ¶13). The "core market" for plaintiff's products is males, ages 18 to 30 years old. Although "some" of plaintiff's jackets are purchased and worn by women, plaintiff's clothing, including its jackets, are "primarily marketed to males of 18 to 30 years old." (Id. ¶12).

Although sales of apparel and accessories comprise 80% of its business, plaintiff also makes and publishes movies to promote its brand. (Id. ¶15). Those movies portray surf, motorcycle, and other cultural themes and activities like music and snowboarding. (Id.). Plaintiff's movie-making activity is a core part of its cultural foundation to enhance the value of its brand. (Id.).

Plaintiff has "locations" throughout the world, including several locations in Australia, Bali, France, Indonesia, Italy, Japan, the Netherlands, South Africa, Spain, Switzerland and Turkey. (Id. ¶9). Plaintiff did not begin conducting business in the United States until 2011. (Id. ¶10). Plaintiff currently operates one store in the United States selling its merchandise. (Id.). That store is located in Venice, California. (Id.). In addition, plaintiff maintains an online store directed to customers in the United States. (Id.).

Defendants produced, marketed, distributed, and released a film, entitled "The Sun is Also a Star" ("the Film"). (Id. ¶22). The Film is "a schmaltzy, teen-style love story." (Id. ¶ 33(D)). In the Film, and in the trailer for the Film, the "lead actress . . . Yara Shahidi" wears a blue and rustic gold bomber jacket ("the Jacket") "with the words 'DEUS EX MACHINA' inscribed in the back in large letters." (Id. ¶ 25). Defendants have authorized copies of the Jacket to be sold by, among others, two different websites. The Jacket is not plaintiff's product, is inferior in quality to plaintiff's products, and is inconsistent with what plaintiff's consumers expect from plaintiff's products. (Id. ¶¶ 26, 28, 33(B)). At some point, "Charles Melton, who played teenager 'Daniel Bae' [in the Film], posed for pictures posted to social media to help promote the [Film] in which he wore clothing actually sold by [plaintiff]." (Id. ¶31). Melton was not wearing the Jacket at the time.[1] (See Docket No. 29 at 10).

Due to defendants' use of the mark DEUS EX MACHINA, plaintiff's customers and potential customers are "confused" as to the image plaintiff "is trying to create with its products." (Docket No. 1 ¶35(B)). Moreover, as a result of defendants' use of the DEUS EX MACHINA mark, plaintiff is being associated with a teen love story that is "totally inconsistent" with the brand image that plaintiff has built. (Id. ¶35(D)).

# III
# LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted. To survive a motion to dismiss on 12(b)(6)

---

[1]  See Schatz v. Republican State Leadership Comm., 669 F3d 50, 55 (1st Cir. 2012) (in resolving motion to dismiss, court can take into consideration "concessions" made in plaintiff's response to motion to dismiss).

grounds, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks omitted). Dismissal can be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

In ruling on a 12(b)(6) motion, courts generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007). Court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party. <u>Klarfeld v. United States</u>, 944 F.2d 583, 585 (9th Cir. 1991).

A motion to dismiss does not test whether the plaintiff will ultimately prevail, but whether the plaintiff has alleged sufficient factual grounds to support a plausible claim to relief, thereby entitling the plaintiff to offer evidence in support of its claim. <u>Iqbal</u>, 556 U.S. at 678; <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Although a complaint need not contain detailed factual allegations, the plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of a cause of action's elements." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citation omitted). A complaint, however, "should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Balistreri</u>, 901 F.2d at 699 (internal quotation and citation omitted).

# IV
# DISCUSSION

## A. Plaintiff's First and Third Causes of Action

In its first cause of action, plaintiff alleges that defendants' unauthorized use of the DEUS EX MACHINA trademark to advertise, promote, market, and sell the Film and the Jacket constitutes trademark infringement in violation of 15 U.S.C. §§ 1114 and 1125(a). (Docket No. 1 at 7-8). In its third cause of action, plaintiff alleges that those same actions constitute unfair competition and false advertising in violation of 15 U.S.C. § 1125(a). (<u>Id.</u> at 9).

The Ninth Circuit uses the <u>Rogers</u>[2] test to "balance the competing interests at stake when a trademark owner claims that an expressive work infringes on its trademark rights." <u>Gordon v. Drape Creative, Inc.</u>, 909 F.3d 257, 260-61 (9th Cir. 2017). The <u>Rogers</u> test is equally applicable to federal claims of false advertising in connection with the use of a trademark in an expressive work. See <u>Dickinson v. Seacrest Enter., Inc.</u>, 2018 WL 6112628, at *5 (C.D. Cal. Oct. 1, 2018) (applying <u>Rogers</u> test to false advertising claim based on defendant's expressive work); <u>see also</u> <u>Mattel, Inc. v. Walking Mountain Prods.</u>, 353 F.3d 792, 808 n.14 (9th Cir. 2003) (noting that in <u>Rogers</u>, "[t]he only Lanham Act claim at issue . . . was 'essentially' a § 1125 'false advertising' claim").[3] The

---

[2]   <u>Rogers v. Grimaldi</u>, 875 F.2d 994 (2d Cir. 1989).

[3]   In their Motion to Dismiss, defendants argue that the <u>Rogers</u> test is applicable to both plaintiff's first and third causes of action. (Docket No. 25-1 at 7-8, 25-26). As explained above, case law supports this argument. (<u>See</u> <u>supra</u>). Moreover, in its Opposition, plaintiff does not contest this argument and, as such, (continued...)

<u>Rogers</u> test, according to the Ninth Circuit, "strike[s] an appropriate balance between First Amendment interests in protecting artistic expression and the Lanham Act's purposes to secure trademarks rights." <u>Gordon</u>, 909 F.3d at 264 (Lanham Act will "apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression.").

Under the <u>Rogers</u> test, the defendant must make a threshold legal showing that its allegedly infringing use of a mark is part of an expressive work protected by the First Amendment. <u>Id.</u> at 264. If the defendant makes this threshold showing, the burden then shifts to the plaintiff claiming infringement to show the following: "(1) that it has a valid, protectable trademark, and (2) that the mark is either not artistically relevant to the underlying work or explicitly misleading as to the source or content of the work." <u>Id.</u> Assuming it can meet that burden, the plaintiff nevertheless "must prove that its trademark has been infringed by showing that the defendant's use of the mark is likely to cause confusion." <u>Id.</u>

Here, the Film qualifies as an expressive work. <u>See</u> <u>Rogers</u>, 875 F.2d at 997 ("Movies, plays, books, and songs are all indisputably works of artistic expression and deserve protection."). Indeed, plaintiff concedes as much. (<u>See</u> Docket No. 29 at 10). Although plaintiff argues that the <u>Rogers</u> test is inapplicable to the Film's trailer and to the promotional appearance by one of its stars in which he allegedly wore plaintiff's clothing, this argument is unavailing because, as the Ninth Circuit has recognized, efforts to advertise, promote, and market an expressive work are merely extensions of the use of a mark in the original expressive work. <u>See</u> <u>Twentieth Century Fox TV v. Empire Distrib., Inc.</u>, 875 F.3d 1192, 1196-97 (9th Cir. 2017) (finding use of the "Empire" mark beyond the title of a TV show -- such as in appearances by cast members, radio play, online advertising, live events, and sale of consumer goods -- protected because "it requires only a minor logical extension of the reasoning of <u>Rogers</u> to hold that works protected under its test may be advertised and marketed by name, and we so hold."); <u>see also</u> <u>Caiz v. Roberts</u>, 382 F. Supp. 3d 942, 952 (C.D. Cal. 2019) (finding that defendant's use of plaintiff's mark in tour promotions and promotional appearances for album whose title allegedly infringed plaintiff's mark was subject to <u>Rogers</u> test because those promotional efforts were merely extensions of defendant's use of mark on album).

Accordingly, in order to state viable claims of trademark infringement and unfair competition or false advertising, plaintiff must allege sufficient facts to show that defendants' use of plaintiff's mark is either not artistically relevant to the Film or that it is explicitly misleading as to the source or content of the Film. As explained below, plaintiff has not alleged sufficient facts to show either.[4]

---

[3](...continued)
concedes that the <u>Rogers</u> test applies to plaintiff's first and third causes of action. <u>See</u> <u>Hopkins v. Women's Div., Gen. Bd. of Global Ministries</u>, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); <u>see also</u> <u>Rafael Arroyo, Jr. v. Sun Rise Prop. LLC</u>, 2020 WL 5260493, at *3 (C.D. Cal. May 15, 2020) (finding that plaintiff conceded argument that defendant made in its summary judgment motion by failing to address argument in opposition to motion); <u>Creamer v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 2017 WL 2992739, at *2 n.1 (same in context of motion to dismiss); <u>Forman v. Wells Fargo Bank, N.A.</u>, 2017 WL 8110528, at *2 (C.D. Cal. April 24, 2017) (same); <u>Silva v. U.S. Bancorp</u>, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) (same).

[4] The Court's finding as to the applicability of the <u>Rogers</u> test is limited only to the Film, its trailer, and Melton's promotional appearance in which he allegedly wore plaintiff's clothing. The Court makes no finding, at this point, as to whether the <u>Rogers</u> test applies to plaintiff's allegations regarding the online sales
(continued...)

### 1. Artistic Relevance

For purposes of the <u>Rogers</u> test, "the level of [artistic] relevance [of the trademark or other identifying material to the work] merely must be above zero" for the trademark or other identifying material to be deemed artistically relevant. <u>E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.</u>, 547 F.3d 1095, 1100 (9th Cir. 2008). "This black-and-white rule has the benefit of limiting [a court's need] to engage in artistic analysis in this context." <u>Brown v. Elec. Arts, Inc.</u>, 724 F.3d 1235, 1245 (9th Cir. 2013).

Here, plaintiff has alleged no facts to show that defendants' use of plaintiff's mark is not artistically relevant to the Film. Indeed, in its Opposition, plaintiff concedes this fact. (<u>See</u> Docket No. 29 at 11 ("[T]he Complaint does not demonstrate or concede artistic relevance.")). As such, plaintiff has not alleged sufficient facts as to this component of the <u>Rogers</u> test.

Defendants, however, urge the Court to go further than simply analyze the allegations in the Complaint and, instead, affirmatively find that their use of plaintiff's mark is artistically relevant to the Film. In doing so, defendants urge the Court to take judicial notice of the Film, the Trailer, and several glossary definitions of the term "deus ex machina." (<u>See</u> Docket No. 25-3). The Film and Trailer, both of which are specifically referenced in the Complaint, form the basis of plaintiff's causes of action. As such, both items are subject to proper judicial notice, and the Court, accordingly, takes judicial notice of both. <u>See</u>, <u>e.g.</u>, <u>Marcus v. ABC Signature Studios, Inc.</u>, 279 F. Supp. 3d 1056, 1063 (C.D. Cal. 2017); <u>Gadh v. Spiegel</u>, 2014 WL 1778950, at *3, n.2 (C.D. Cal. Apr. 2, 2014); <u>Pratap v. Wells Fargo Bank, N.A.</u>, 63 F. Supp. 3d 1101, 1105 n.1 (N.D. Cal. 2014). Notwithstanding that fact, the Court declines, at this time, to determine that the use of the mark is artistically relevant to the Film. Making that determination now would be inequitable because, as plaintiff concedes, plaintiff has not yet attempted to allege any facts to show that the use of the mark has no artistic relevance. <u>Compare</u> <u>Fortres Grand Corp. v. Warner Bros. Ent., Inc.</u>, 947 F. Supp. 2d 922, 932 (N.D. Ind. 2013) (making determination of artistic relevance in resolving motion to dismiss of trademark infringement claim where plaintiff's allegations in complaint effectively conceded that defendant's use of plaintiff's mark in film was artistically relevant to defendant's film). For the same reason, the Court declines at this point to take judicial notice of the glossary entries identified in defendants' Request for Judicial Notice.

To be sure, plaintiff faces an uphill battle to allege sufficient facts to show that defendants' use of plaintiff's mark is not artistically relevant to the Film. Indeed, in each of its published opinions in which it has applied the <u>Rogers</u> test, the Ninth Circuit has found that the use of the given mark was artistically relevant to the defendant's expressive work. <u>See</u> <u>Gordon</u>, 909 F.3d at 266-69 (collecting cases). What is more, plaintiff cites no case -- published or unpublished -- within the Ninth Circuit in which a court has found that a defendant's use of a

---

[4](...continued)

of the Jacket. To be sure, an argument can be made that any purported sales of the Jacket could be considered promotional materials related to the Film. But defendants, at the pleading stage, cannot establish that fact, and plaintiff does not allege it. Accordingly, making a finding that the Jacket is, in fact, part of the promotion of the Film would be inappropriate without the benefit of supporting evidence. Presumably anticipating this result, defendants urge the Court to take judicial notice of printouts from the websites identified in the Complaint showing that plaintiff's trademark does not appear on (and is not referenced on) the websites' advertisements for the Jacket. The Court declines to do so because the printouts are not definitive as to whether the websites' advertisements ever included images of, or references to, plaintiff's trademark. Rather, the printouts capture only a snapshot in time as to the websites' advertisements for the Jacket. Accordingly, taking judicial notice of the printouts would accomplish little in resolving the question as to whether plaintiff can state a viable claim as to the purported sales of the Jacket.

plaintiff's mark was not artistically relevant to the defendant's expressive work. Nevertheless, plaintiff should be afforded the opportunity to allege such facts and attempt to cure the existing deficiencies in its Complaint.[5]


## 2. Explicitly Misleading

"Even if a defendant's use of the plaintiff's mark is artistically relevant to the work, the creator of the work can be liable under the Lanham Act if the creator's use of the mark is explicitly misleading as to source or content." Gordon, 909 F.3d at 269 (internal quotations and citation omitted). The "explicitly misleading" prong of the Rogers test "points directly at the purpose of trademark law, namely to avoid confusion in the marketplace by allowing a trademark owner to prevent others from duping consumers into buying a product they mistakenly believe is sponsored [or created] by the trademark owner." Brown, 724 F.3d at 1245 (internal quotations and citation omitted). It is, however, "not enough to show that 'the defendant's use of the mark would confuse consumers as to the source, sponsorship or content of the work'; rather, the plaintiff must show that the defendant's use '*explicitly* misl[ed] consumers.'" Gordon, 909 F.3d at 267 (Twentieth Century Fox, 875 F.3d at 1199) (emphasis in original). Accordingly, in analyzing this prong of the Rogers test, courts focus on "the nature of the [junior user's] behavior" as opposed to "the impact of the use." Brown, 724 F.3d at 1245-46.

Although courts must consider all of the relevant facts and circumstances to determine whether a use of a mark is explicitly misleading as to its source, the Ninth Circuit has identified two factors to aid courts in making that determination. See Gordon, 909 F.3d at 269-70. First, courts should consider the degree to which the junior user employs the mark in the same way as the senior user. Id. at 270. Where a junior user employs a senior user's mark in a different context than the senior user, the use of the mark is not explicitly misleading as to the source of the infringing material, but rather, at most, "only suggestive" of the material's source. Id. Thus, a song lampooning the values and lifestyle that a songwriter associated with Barbie dolls or a series of photographs depicting Barbie dolls (or parts thereof) in "absurd positions" would not lead consumers to believe that the holder of the Barbie mark sponsored the song or the photographs. Id. (citing Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894 (9th Cir. 2002); Mattel, 353 F.3d at 806). Likewise, Empire Distribution, a hip-hop record label, could not show that defendant's television show "Empire" about a fictional record company called "Empire Enterprises" was explicitly misleading because the defendant employed the "Empire" mark in a television show, as opposed to using it in connection with the actual sale of records. Gordon, 909 F.3d at 270 (citing Twentieth Century Fox).

By contrast, where the junior user employs the mark in the same way as the senior user, the explicitly misleading component of the Rogers test is likely to be satisfied. See Gordon, 909 F.3d at 270 (stating in dicta that television show entitled "Law and Order: Special Hip Hop Unit" would be explicitly misleading as to source of

---

[5]     Defendants also request that the Court take judicial notice of a paperback copy of the novel "The Sun is Also a Star," by Nicola Yoon. (See Docket No. 25-3). According to defendants, judicial notice of the novel is warranted because the Film forms the basis of plaintiff's claims and because the Film is based on Yoon's novel. While the Court agrees with defendants as to the propriety of taking judicial notice of the Film, the Court disagrees with defendants regarding the propriety of taking judicial notice of the novel. The Complaint contains no allegations regarding or referencing the novel. What is more, the Film -- not the novel -- forms the basis of plaintiff's causes of action. Although defendants assert that the Film is based upon the novel, the only way the Court could credit that assertion is if the Court were to accept defendants' allegations in support of their Motion to Dismiss as true. But in resolving defendants' Motion to Dismiss, the Court can only accept as true the allegations in the Complaint (as well as those matters properly subject to judicial notice). See Swartz, 476 F.3d at 763. Accordingly, the Court denies defendants' request to take judicial notice of the novel.

work in light of existing "Law and Order: Special Victim's Unit" mark). Thus, in <u>Gordon</u>, the Ninth Circuit found that a greeting card company's use of the plaintiff's "Honey Badger" marks could be explicitly misleading, in part, because the plaintiff also sold greeting cards using the mark. 909 F.3d at 271.

Courts consider the extent to which the junior user has added its own expressive content to the work beyond the mark itself. In <u>Gordon</u>, for example, the defendant's use of the plaintiff's "Honey Badger" marks on greeting cards supported a finding that the use of the marks was explicitly misleading because the defendant, like the plaintiff, used the marks as the centerpiece of its greeting cards and, in some instances, used the marks without any other text. 909 F.3d at 271. By contrast, in <u>Caiz</u>, the plaintiff, a rapper named Mastermind, could not show that a competing rapper's use of the Mastermind mark as the title of an album was explicitly misleading where the album was only one of six produced by the competing rapper, the word "Mastermind" appeared on the album only nine times over sixteen tracks, and, where it appeared, the word was used "through [the competing rapper's] own artistic expression." 382 F. Supp. 3d at 951.

Here, plaintiff has not alleged sufficient facts to show that defendants' use of the "DEUS EX MACHINA" mark is explicitly misleading as to the source of the Film or the advertisements and promotions related to the Film. First, defendants' use the mark is different from plaintiff's primary use of the mark. Plaintiff primarily uses the mark to market various articles of clothing. Indeed, apparel and accessories comprise 80% of plaintiff's business. By contrast, defendants used the mark in a theatrical film. Although plaintiff alleges that it also produces movies to promote its brand, those movies promote plaintiff's brand story, which draws on custom motorcycle culture and vintage surf culture, along with the intersection and mingling of those lifestyle cultures with art, music, and other popular culture. Nothing in the Film touches on any of those themes and activities. On the contrary, as plaintiff alleges, the Film is "a schmaltzy, teen-style love story," and is "totally inconsistent" with the brand image that plaintiff has built. Moreover, the mark in the Film appears on a jacket worn by a young female. This allegation also undermines a finding that the use of the mark is explicitly misleading because plaintiff alleges that its clothing, including its jackets, is "primarily marketed to males" between the ages of 18 and 30.

Second, defendants have added their own expressive content to the Film beyond the mark itself. Unlike <u>Gordon</u>, where the defendant's unadorned use of the "Honey Badger" marks was the centerpiece of the allegedly infringing greeting cards, the "DEUS EX MACHINA" mark plays only a part in a movie about, among other things, two young people who meet and fall in love over the course of the day, only to have events beyond their control tear them apart. Specifically, the Film uses the mark to establish a connection between the couple -- as the young man writes the words "deus ex machina" in a notebook and then later sees the young female wearing the Jacket bearing those same words.

Although the Court makes no determination at this point as to the artistic relevance of the mark in the Film, there is nothing in the Film or in plaintiff's allegations to suggest that the mark, itself, is the centerpiece of the Film or that, like the unadorned use of the "Honey Badger" marks in <u>Gordon</u>, defendants used the mark without adding any artistic expression of their own. <u>See</u> <u>Gordon</u>, 909 F.3d at 270-71 (explaining "that the concern that consumers will not be misled as to the source of [a] product is generally allayed when the mark is used as only one component of a junior user's larger expressive creation, such that the use of the mark at most implicitly suggest[s] that the product is associated with the mark's owner:"); <u>compare</u> <u>id.</u> at 271 (explaining that "using a mark as the centerpiece of an expressive work itself, unadorned with any artistic contribution by the junior user, may reflect nothing more than an effort to induce the sale of goods or services by confusion or lessen the distinctiveness and thus the commercial value of a competitor's mark") (internal quotations and citation omitted). What is more, plaintiff's description of the Film -- "a schmaltzy, teen-style love story" -- betrays any suggestion that the mark serves as the centerpiece of the Film.

Finally, although not dispositive, in and of itself, the Film includes no affirmative or implicit statement indicating plaintiff's sponsorship of, or association with, the Film. Indeed, the Jacket, on which the mark appears, includes no reference to surfing or motorcycles or to plaintiff's brand image. On the contrary, the mark on the Jacket is unaccompanied by anything. Plaintiff does not allege that the way in which the mark appears on the Jacket resembles the way in which the mark appears on plaintiff's jackets. Rather, based on plaintiff's allegations, the Jacket is "inconsistent" with the jackets that plaintiff markets to young men. (See Docket No. 1 ¶26 ("[T]he style and coloring of the Jacket is not consistent with . . .what most consumers and motorcycle enthusiasts would associate with a motorcycle lifestyle consistent with [plaintiff's] mark."); see also id. ¶33(D) (describing the Jacket as "gaudy"); Docket No. 29 at 6 ("The jacket appears to be of inferior quality and does not match [p]laintiff's streetwear other than the fact that it is a bomber jacket with the Trademark on the back, just like jackets [p]laintiff sells.")). Indeed, the only similarities between the Jacket and the jackets that plaintiff sells appear to be that both are "bomber jackets" and both bear the words "deus ex machina."

In short, plaintiff has not alleged sufficient facts to show that the Film's use of the "DEUS EX MACHINA" mark would induce plaintiff's customers or any consumers into believing that plaintiff sponsored, endorsed, or was somehow associated with the Film. Accordingly, plaintiff has failed to state a claim for trademark infringement or unfair competition or false advertising with respect to the Film, the Trailer, and Melton's promotional appearance in which he allegedly wore plaintiff's clothing. Consequently, plaintiff's first and third causes of action with respect to the Film, the Trailer, and Melton's promotional appearance must be dismissed.[6]

## B.    Plaintiff's Second Cause of Action

In its second cause of action, plaintiff alleges that defendants' unauthorized use of the DEUS EX MACHINA trademark to advertise, promote, market, and sell the Film and the Jacket constitutes trademark dilution in violation of 15 U.S.C. § 1125(a).

To prevail on a trademark dilution claim, "a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 634 (9th Cir. 2008).

For purposes of a dilution claim, a mark qualifies as famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2). The requirement that a mark be famous is designed to "carefully [limit] the class of trademarks eligible for dilution protection." Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 875 (9th Cir. 1999). Indeed, trademark dilution "is a cause of action reserved for a select class of marks -- those marks with such powerful consumer associations that even noncompeting uses can impinge on their value." Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1011 (9th Cir. 2004) (internal quotation marks omitted). Consequently, "dilution protection [extends] only to those whose mark is a 'household name.'" Id.; see also Avery Dennison

---

[6]     The Court notes that plaintiff's allegations regarding Charles Melton's posing for pictures posted to social media to help promote the Film in which "he wore clothing actually sold by" plaintiff fail to state a claim irrespective of whether Melton's alleged act is governed by the Rogers test. Melton is not a named defendant, and plaintiff makes no allegation suggesting that the named defendants directed or encouraged Melton to wear any of plaintiff's clothing or that the named defendants had any involvement in, or awareness of, Melton's clothing choices. What is more, plaintiff admits that Melton was not wearing the Jacket, and plaintiff does not allege that its mark was visible on whatever article of plaintiff's clothing that Melton wore in the photograph that was posted to social media.

Corp., 189 F.3d at 875 ("[T]o meet the 'famousness' element of protection under the dilution statutes, a mark [must] be truly prominent and renowned.") (internal quotations and citations omitted); Dahon N. Am., Inc. v. Hon, 2012 WL 1413681, at *9 (C.D. Cal. April 24, 2012) ("[T]rademark dilution claims are restricted to truly famous marks, such as Budweiser beer, Camel cigarettes, and Barbie dolls."). Courts consider the following factors to determine whether a mark is famous: "(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties[;] (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark[;] (iii) The extent of actual recognition of the mark[;] [and] (iv) Whether the mark was registered . . . on the principal register." 15 U.S.C. § 1125(c)(2)(A)(i)-(iv).

Here, plaintiff has not alleged sufficient facts to show that its "DEUS EX MACHINA" mark is famous for purposes of a trademark dilution cause of action. Plaintiff has alleged nothing in its Complaint suggesting that the general consuming public recognizes plaintiff's mark or associates it with plaintiff's brand. Instead, plaintiff alleges that its mark is widely recognized only among a discrete group of males -- in particular, males aged 18 to 30 who are drawn to custom motorcycle and vintage surf culture. That allegation, at most, establishes that plaintiff's mark is famous in a "niche" market; however, dilution protection is unavailable for marks that are famous only in "niche" markets. See Planet Coffee Roasters, Inc. v. Dam, 2009 WL 2486457, at *3 (C.D. Cal. Aug. 12, 2009) (noting that federal trademark statute was specifically amended "to deny protection to marks that are famous only in 'niche' markets"); MGA Ent., Inc. v. Dynacraft BSC, Inc., 2018 WL 2448123, at *6 (C.D. Cal. May 30, 2018) (same); Varsity News Network, Inc. v. Carty Web Strategies, Inc., 2017 WL 7201873, at *7 (C.D. Cal. Aug. 30, 2017) (same); McCall's Country Canning, Inc. v. Paula Deen Ent., Inc., 2010 WL 11508996, at *3 (S.D. Cal. Feb. 8, 2010) (same).

Moreover, plaintiff alleges only conclusory facts regarding the amount, volume, and geographic extent of sales of the products that it offers under the mark. For example, plaintiff does not allege how much of its apparel it sells (either worldwide or in the United States) in any given fiscal year, what its annual sales revenue is, or where those sales occur. Although plaintiff alleges that it has locations in several countries around the world, plaintiff provides no allegations regarding the number of stores that it operates in those countries or the amount or volume of its sales in those countries. What is more, plaintiff alleges that it did not even begin conducting business in the United States until 2011. And, aside from operating an online store directed at United States customers, plaintiff's allegations regarding the extent of its business in the United States are limited to operating only one store in Venice, California.

Plaintiff's allegations concerning its promotion and advertising of its mark are, likewise, largely conclusory. Although plaintiff alleges that it has "devoted substantial time, effort, and resources to the development and extensive promotion" of its mark and "products offered thereunder," such conclusory allegations are insufficient to survive a motion to dismiss. See Arcsoft, Inc. v. Cyberlink Corp., 153 F. Supp. 3d 1057, 1067 (N.D. Cal. 2015) ("Given the high burden that a plaintiff faces in establishing that its mark is sufficiently famous to support a dilution claim, ArcSoft must plead more than conclusory assertions of fame to survive a motion to dismiss: it must plead facts that support a plausible inference that its mark qualified as a household name by . . . defendants' first use of the Infringing Marks."); Parts.com, LLC v. Yahoo! Inc., 996 F. Supp. 2d 933, 940-41 (S.D. Cal. 2013) (finding plaintiff's conclusory allegations that it "'expended a significant amount of resources' to 'promote[ ] . . . [the] mark throughout the United States'" insufficient to satisfy applicable pleading standard).

In short, aside from the alleged fact that plaintiff owns a registered trademark for the DEUS EX MACHINA mark, each of the relevant factors for determining famousness favors defendants. By and large, plaintiff's allegations are either too conclusory to support -- or affirmatively undercut -- a plausible trademark dilution

claim.  Accordingly, this cause of action must be dismissed.[7]

# V
# CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** defendants' Motion to Dismiss and **dismisses without prejudice** plaintiff's second cause of action in its entirety and plaintiff's first and third causes of action to the extent that they are based on the Film, its trailer, and Melton's promotional appearance in which he allegedly wore plaintiff's clothing.  The Court **DENIES** defendant's Motion to Dismiss **without prejudice** as to plaintiff's first and third causes of action with respect to plaintiff's allegations regarding the online sales of the Jacket.

Plaintiff may amend its Complaint within thirty (30) days from the date of this Order.  To be sure, the Court has doubts as to plaintiff's ability to cure some of the deficiencies in its causes of action, such as plaintiff's ability to allege sufficient facts showing that its mark is famous and that defendants' use of its mark has no artistic relevance to the Film.  Nevertheless, the Court grants plaintiff an opportunity to attempt to do so.  If plaintiff does not file a First Amended Complaint within thirty days, the Court shall issue an order dismissing plaintiff's second cause of action with prejudice and first and third causes of action with prejudice with respect to the Film, its trailer, and Melton's promotional appearance in which he allegedly wore plaintiff's clothing.

IT IS SO ORDERED.


cc:    Counsel of Record


Initials of Deputy Clerk _____ch_____

---

[7]    Defendants also argue that plaintiff cannot state a viable trademark dilution cause of action because the use of plaintiff's mark in the Film is noncommercial.  (Docket No. 25-1 at 24-25).  As explained above, however, the Court finds that plaintiff's Complaint is deficient on the threshold issue of fame of the mark; as such, the Court declines to address this argument.